IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARCUS T. DIXON,                              )
                                             )
                    Plaintiff,               )
                                             )
vs.                                          )        Case No. 19-cv-825-DWD
                                             )
JOSE DELGADO,                                )
JASON ROBINSON,                              )
CHAD RUCKER,                                 )
DANIEL KORTE,                                )
DAVID STOCK,                                 )
SCOTT THOMPSON,                              )
JOSHUA D. CHEEK,                             )
KENT E. BROOKMAN, and                        )
JASON N. HART                                )
                                             )
                    Defendants.              )

## <u>MEMORANDUM AND ORDER</u>

**DUGAN, District Judge:**

Plaintiff Marcus Dixon, an inmate in the custody of the Illinois Department of

Corrections ("IDOC"), filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged

constitutional deprivations that occurred at Menard and Centralia Correctional Centers

(Docs. 1, 53).  After screening and the substitution of Defendants, Plaintiff proceeds on

the following claims:

> **Count 1**: Eighth Amendment claim against Defendants Delgado,
> Stock, Robinson, Rucker, [and] Korte[] for using excessive force and/or
> failing to intervene in its use against Plaintiff at Centralia on September 27,
> 2017.

> **Count 2**: Fourteenth Amendment equal protection claim against
> Defendants Delgado, Stock, Robinson, Rucker, [and] Korte[] singling
> Plaintiff out for an assault because of his race on September 27, 2019.

**Count 3**: First Amendment retaliation claim against Defendants Delgado and [Cheek] for issuing Plaintiff a false disciplinary ticket and filing charges in response to his filing grievances.

**Count 4**: Fourteenth Amendment procedural due process claim against Defendants Brookman and Hart related to Plaintiff's disciplinary charge and hearing.

(Docs. 16, 52).[1]  Now before the Court is the Motion for Summary Judgment (Doc. 93) and Memorandum in Support (Doc. 94) filed by Defendants Brookman, Cheek, Delgado, Hart, Korte, Robinson, Rucker, and Stock.  Plaintiff filed a Response (Doc. 96).  For the reasons detailed below, the Motion will be granted, in part, and denied, in part.

## Preliminary Ruling

As of the date of this Memorandum and Order, Defendant Scott Thompson remains listed as a Defendant on the docket sheet.  However, the Motion for Summary Judgment does not indicate that Defendant Scott Thompson participated in the briefing (Docs. 93, 94).  Further, the Court observes that Defendant Thompson is not a party to any of the remaining Counts.  Accordingly, any alleged remaining claims against Defendant Thompson are **DISMISSED**, **without prejudice**, and the Clerk of Court is **DIRECTED** to terminated Defendant Thompson from the docket sheet.

## Background

Defendants concede that there are disputed material facts with respect to Plaintiff's excessive force and/or failure to intervene claim (Doc. 94, p. 2, n.1).  Thus, mindful that the Court must view the evidence in the light most favorable to, and draw

---

[1] Defendant Cheek was substituted for John Doe #1 on January 7, 2021 (Doc. 33).  Further, the Doe Defendants (John Doe 2 and John Doe 3) in counts 1 and 2 were dismissed on November 9, 2021 (Doc. 64).

2

all reasonable inferences in favor of, the non-moving party, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013), the Court will reiterate Plaintiff's version of events and note where Defendants disagree with the supplied facts.

On August 2, 2017, Plaintiff was transferred from Western Illinois Correctional Center ("Western") to Centralia Correctional Center ("Centralia") on a writ (Doc. 1, p. 10, Doc. 53, p. 10).[2] Soon after his arrival at Centralia, Plaintiff had a conversation with Defendant Stock to ask about having his personal property transferred from Western since he was going to be housed at Centralia "for a while" (Doc. 96, p. 15, ¶ 3). Stock informed Plaintiff that he would ensure Plaintiff would get his property sent from Western if Plaintiff was housed at Centralia for fifty to sixty days (*Id.*). While at Centralia, Plaintiff was taken to medical appointments with his neurologist for "tumor removal surgery from Plaintiff's head" and his endocrinologist for "emergency endoscopy surgery." (Doc. 96, p. 15, ¶¶ 4-5).

On September 27, 2017, approximately fifty-five days after their initial conversation, Plaintiff spoke with Defendant Stock again about obtaining his personal property from Western (Doc. 96, p. 16, ¶ 7). This conversation escalated, and Stock asked Plaintiff to "step outside the Day Room" but Plaintiff refused (Doc. 96, p. 17, ¶ 8). According to Plaintiff, Stock then left the Day Room and returned with Defendants Delgado, Rucker, Robinson, and Korte, who all "circled him" (Doc. 96, p. 17, ¶ 9)[3]. At

---

[2] Plaintiff briefly argues that this Writ was a "Court Wirt" and not a "Medical Writ" (Doc. 96, p. 13), despite also referring to the Writ as a Medical Writ in his Affidavit (Doc. 96, p. 15, ¶ 2). However, for the purposes of this Motion, this distinction is not material.

[3] Plaintiff also mentions that two other unidentified individuals returned with Defendants, but those individuals are not a party to this lawsuit.

this time, Plaintiff recalls holding a cup of water in his hand, and states he handed it to Defendant Delgado after Delgado asked him for it (Doc. 96, p. 17, ¶ 10).[4]

Delgado then asked Plaintiff "what was going on" to which Plaintiff explained that he wanted to make sure he would receive his personal property back from Western as Defendant Stock had told him (Doc. 96, p. 17, ¶ 10).  Delgado told Plaintiff that he would not receive his property back, so Plaintiff asked if he could be transferred back to Western because he needed his personal property to use in his post-conviction court proceedings (Doc. 96, p. 17, ¶ 11).  Delgado responded, "that's not going to happen" and Defendants began shouting, "you want to be a tough guy" and "we are going to beat you like the crybaby you are" (Doc. 96, p. 17, ¶¶ 12-13).  Defendants Delgado, Stock, Rucker, and Korte slammed Plaintiff to the ground and repeatedly punched and kicked him, before lifting Plaintiff off the floor and dragging him backwards to Centralia's segregation unit (Doc. 96, pp. 18-19, ¶¶ 12-17).  During the alleged assault, Defendants Stock and Robinson watched the assault but did not intervene, however, Defendant Robinson shouted, "give the tough guy what he needs a good ole beating" (Doc. 96, p. 17, ¶ 14).  Defendant Delgado further shouted that the assault was "going to be a modernized lynching boy. Now you will know how Rodney King felt." (Doc. 96, p. 17, ¶ 14).  Plaintiff states he sustained injuries to his right eye, a fractured elbow, and injuries to his right shoulder and back area (Doc. 96, p. 19 ¶ 15).

---

[4] One of the Defendants' reports describes this cup as a "peanut butter jar." (Doc. 94-5, p. 5).

Defendants dispute these events, and instead maintain that Plaintiff became aggravated about his housing situation and demanded a transfer. When Defendant Delgado denied the transfer, he also ordered Plaintiff to return to his cell, but Plaintiff refused. Delgado then instructed Plaintiff to turn around to be cuffed up, at which time Plaintiff punched Defendant Delgado in the face (Doc. 94-3). Plaintiff was then restrained and taken to segregation for safety purposes (Doc. 94-3). Plaintiff denies that he assaulted Defendant Delgado, and insists that he "never resisted, punch[ed], assaulted, nor committed aggravated battery" to any of the Defendants (Doc. 96, p. 19, ¶ 16).

Following the incident, Defendants Stock, Rucker, Delgado, Robinson, and Korte, completed incident reports (Doc. 94-3, pp. 1-6, 8-10). In these reports, Defendants maintain that Plaintiff assaulted Defendant Delgado by striking or punching Delgado in the face (Doc. 94-3, pp. 1-6, 8-10). Non-parties Correctional Officer T. Meyer and Nurse Pickett also submitted incident reports (Doc. 94-3, pp. 7, 11). In Officer Meyer's report, he represented that he observed Defendants Delgado, Robinson, Rucker, and Korte in the A/B Day Room speaking to Plaintiff at approximately 2:15 PM (Doc. 94-3, p. 7). Meyer stated that after Delgado ordered Plaintiff to turn around and cuff up, Plaintiff swung his closed fist and hit Delgado in the face (*Id.*). Plaintiff was then escorted to segregation (*Id.*). In Nurse Pickett's report, she indicated that she responded to a call to go to segregation on September 27, 2017, at approximately 2:20 PM (Doc. 94-3, p. 11). Upon her arrival, she represents that she found Plaintiff in a shower cell, fully clothed, and with "a small 2 cm laceration" to the "L eyebrow area", which she treated (Doc. 94-3, p. 11).

At approximately 4:00 PM that evening, Plaintiff claims an individual named Major Rose, who is alleged to be an African American lady, told him that "she was going to get Plaintiff out of Centralia because officers are mad at you, and she did not want anything else to happen to Plaintiff" (Doc. 96, p. 19, ¶ 18). Plaintiff was then transferred to Menard Correctional Center ("Menard") in the evening of September 27, 2017 (Doc.96, p. 20, ¶ 20).

Also on September 27, 2017, at approximately 4:00 PM, Defendant Delgado wrote Plaintiff a prison disciplinary ticket (Doc. 94-4, p. 4; Doc. 1, p. 16). The report accused Plaintiff of "102a—Assault With Injury" and provided the following narrative:

> On the above date and approximate time [September 27, 2017, 2:15 PM], I, Lt. J. Delgado #11689, reported to the Receiving Unit as Offender DIXON, MARCUS B66674 was refusing housing at Centralia CC and was demanding a transfer. Upon ordering Offender to turn around a[nd] cuff up, Offender DIXON yelled, "You ain't taking me to seg!" Offender DIXON then spun around and struck me in the mouth with a closed right fist. Other staff responded to assist and offender was taken to the ground as he was refusing to be cuffed up. Offender DIXON was then handcuffed and escorted to the segregation unit. Offender DIXON was identified via State ID and Institutional Graphics.

(*Id.*) The report recommended disciplinary action for "safety security of facility" and "seriousness of offense", and a hearing investigator's review was marked as required (*Id.*).

On October 3, 2017, Defendants Brookman and Hart held an adjustment committee hearing concerning the disciplinary ticket (Doc. 53, p. 32; Doc. 1, p. 17). The adjustment committee found Plaintiff guilty of assault with injury, and as punishment, Plaintiff received one year of "C Grade", one year in segregation, one year of commissary

6

restriction, and six months of contact visit restrictions (Doc. 53, p. 32; Doc. 1, p. 17.).  This disciplinary action has not been reversed or invalidated.

Plaintiff claims he never received a copy of the disciplinary ticket prior to his adjustment committee hearing on October 3, 2017, because correctional officers at Menard did not give him a copy (Doc. 96, p. 20, ¶ 21).  According to Plaintiff, upon Plaintiff's arrival at Menard on September 27, 2017, Correctional Officer Royster picked up Plaintiff's discipline ticket and put it in his pocket before escorting Plaintiff to the North-2-(2) gallery (Doc. 96, p. 20, ¶ 21).  Plaintiff asked Royster to see the ticket, but Royster refused so Plaintiff began screaming (Doc. 96, p. 20, ¶ 22).  In an affidavit, another Menard Inmate, Tavaris Burks, stated that he witnessed Plaintiff and Royster's interactions on September 27, 2017, and confirmed that Officer Royster would not give Plaintiff a copy of the report (Doc.96, p. 31).  Defendants do not dispute that Plaintiff never received a copy of his disciplinary ticket.  Instead, Defendants argue that Plaintiff refused to sign for the report.  In support, Defendants point to the text at the bottom of Plaintiff's disciplinary report where Officer marked that "Plaintiff refused to sign" for the report at the time of service on September 27, 2017, at 8:08 PM (Doc. 1, p. 16; Doc. 53, p. 29).

On or about October 5, 2017, Defendant Cheek completed a detailed Report of Investigation of the events on September 27, 2017 (Doc. 94-5).  The Report incorporated summaries of Cheek's interviews with Defendants, Plaintiff, and multiple alleged witnesses to the events, along with summaries of medical records, photographs, and incident reports (Doc. 94-5, pp. 1-14).  None of the underlying attachments were included

7

with the Motion for Summary Judgment.  In the report, Defendant Cheek summarized

Plaintiff's medical reports from September 29, 2017, indicating that there was no fracture

to Plaintiff's right elbow but a contusion, or deep bruise of the elbow (Doc. 94-5, p. 8).

Defendant Cheek provided the following conclusions in his Report:

> Based on direct evidence and witness statements, the charges against
> [Plaintiff] violated Departmental Rule 504: 102a—Assault with injury,
> 215—Disobeying a Direct Order Essential to Safety and Security, and 304—
> Insolence, is substantiated.   The investigation concluded the minimal
> amount of force used to gain compliance with [Plaintiff] was justified.
> Furthermore, based on conflicting witness statements of the allegation
> against Correctional Lieutenant DAVID C. STOCK, who was temporarily
> assigned as the Acting Warden of Programs at Centralia Correctional
> Center, the charge of Departmental Rule of Conduct of Individual is
> unsubstantiated.  The investigation will be submitted to the Clinton County
> State Attorney's Office for their review and possible prosecution on the
> charge of Aggravated Battery.

(Doc. 94-5, p. 13).

On or about October 11, 2017, and October 25, 2017, Plaintiff filed grievances

concerning his disciplinary report and further asserted claims of assault and staff

misconduct (Doc. 53, p. 31).  On November 21, 2017, the Administrative Review Board

("ARB") sent Plaintiff correspondence recommending Plaintiff's grievances be denied

because it was "reasonably satisfied" that Plaintiff committed the offenses after its review

of the available information and procedural due process safeguards (Doc. 53, p. 31). The

ARB was also unable to substantiate Plaintiff's claims of staff misconduct (*Id.*).  This

correspondence also indicated that Plaintiff attended at least six medical appointments

in September, October, and November 2017 (*Id.*).  The ARB summarized that Plaintiff had

8

an x-ray on September 29, 2017, and an MRI on November 17, 2017 (*Id.*).  The x-ray

allegedly showed no fracture, but there is no indication of the results of the MRI (*Id.*).[5]

On or about November 7, 2017, and December 1, 2017, Plaintiff filed grievances

concerning the Adjustment Committee Hearing (Doc. 96, p. 32).  On January 24, 2018, the

Administrative Review Board ("ARB") denied the grievances finding that Plaintiff's

allegations could not be substantiated, and the disciplinary incident was appropriately

addressed by the facility (Doc. 96, p. 32).  Plaintiff submitted another grievance on

February 10, 2018, requesting to have his prison disciplinary conviction expunged (Doc.

96, pp. 41-42).  On April 11, 2018, the Administrative Review Board denied the grievance

as untimely, stating "Offender put into SEG on 9/27/17, **Ticket served onto offender**

**10/13/17**, Counselor did not receive grievance until 12/27/17. Well past timeframes

outlined in DR504.810." (Doc. 96, p. 43) (emphasis supplied).

On December 22, 2017, Mark A. Delia, Chief of Investigations and Intelligence,

relying on Defendant Cheek's investigation report, recommended that the Clinton

County State's Attorney Office review the incident for possible prosecution (Doc. 53, p.

39).   On December 28, 2017, the Clinton County State's Attorney charged Plaintiff by

information with one count of aggravated battery in violation of 720 Ill. Comp. Stat. Ann.

5/12-3.05(h) (Doc. 53, p. 36).  On September 4, 2018, following a jury trial in Clinton

County, Plaintiff was found not guilty of assault (Doc. 53, p. 35).

---

[5] No parties submitted medical records, however, statements in Plaintiff's affidavit (Doc. 96) and Defendant Cheek's report (Doc. 94-5) suggest that Plaintiff attended multiple medical visits during this time.

On July 20, 2019, Plaintiff filed his complaint pursuant to 42 U.S.C. § 1983, alleging his excessive force, equal protection and retaliation claims against Defendants Delgado, Stock, Robinson, Rucker, Korte, and Cheek (Docs. 1, 16).  On June 7, 2021, Plaintiff sought leave to amend his complaint to add his procedural due process claim against Defendants Brookman and Hart (Docs. 51-53).  Leave was granted on June 30, 2021 (Doc. 52).

### Legal Standard

Summary judgment is proper if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Factual disputes are genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented, and they are material only if their resolution might change the suit's outcome under the governing law." *Maniscalco v. Simon*, 712 F.3d 1139, 1143 (7th Cir. 2013) (citation and internal quotation marks omitted). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Apex Digital, Inc.*, 735 F.3d at 965 (citation omitted).

### Discussion

Defendants present four arguments in favor of summary judgment.  First, Defendants argue that Plaintiff's claims are barred by *Heck v. Humphrey* because they challenge the findings of his prison disciplinary conviction, and that conviction has not been invalidated.  Second, Defendants argue that there is no evidence that demonstrates that the incident on September 27, 2017 resulted from racial animus or that any of the events surrounding the incident show retaliation for any First Amendment activity.

Third, Defendants argue that Plaintiff's procedural due process claim is barred by the statute of limitations, or alternatively, Plaintiff has not demonstrated a liberty interest implicated by the disciplinary proceedings. Finally, Defendants argue that they are entitled to qualified immunity.

As further detailed below, the Court agrees that there are no genuine issues or material fact as to Count 2 (Equal Protection) and Count 3 (Retaliation). Accordingly, summary judgment will be granted as to those Counts. However, summary judgment will be denied as to Count 1 (Excessive Force) and Count 4 (Procedural Due Process).

### Count 1: Excessive Force

In Count 1, Plaintiff asserts an Eighth Amendment claim for excessive force and/or failure to intervene in its used against Defendants Delgado, Stock, Robinson, Rucker, and Korte related to the September 27, 2017 incident. Defendants clearly disagree with Plaintiff's recitation of the events, and further argue that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). "Under the rule of the *Heck* case, a civil rights suit cannot be maintained by a prisoner if a judgment in his favor would 'necessarily imply' that his conviction had been invalid, and for this purpose the ruling a prison disciplinary proceeding is a conviction." *Moore v. Mahone*, 652 F.3d 722, 724 (7th Cir. 2011) (citing *Heck*, 512 U.S. 477, *Edwards v. Balisok*, 520 U.S. 641 (1997), and *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008)) (internal citations omitted). Thus, if a prisoner in his civil rights case challenges a finding in his prison-discipline case that is essential to the decision in that case, *Heck* requires dismissal of those claims. *Id.* (citing *Okoro v. Callaghan*, 324 F.3d 488, 480 (7th Cir. 2003) ("It is irrelevant that he disclaims any intention of

challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."); *see also Tolliver v. City of Chicago*, 820 F.3d 237, 244 (7th Cir. 2016).

Here, Defendants argue that Plaintiff's prison disciplinary conviction for assault of Delgado requires dismissal of his excessive force claim as an impermissible challenge to the assault conviction, or alternatively, as raising arguments that are inconsistent with the conviction. Throughout Plaintiff's briefing he denies that he assaulted Defendant Delgado, despite the prison disciplinary proceeding findings to the contrary. Because there is no evidence that the prison disciplinary conviction was invalidated or overturned, Plaintiff's arguments denying his assault of Delgado are impermissible challenges to the validity of the prison disciplinary conviction and findings, and are foreclosed by *Heck*.[6]

However, Plaintiff also argues that Defendants' use of force in restraining him on September 27, 2017 violates his Eighth Amendment rights. As the Seventh Circuit detailed in *Gilbert*, 512 F.3d at 901, *Heck* "does not affect litigation about what happens after the crime is completed." *Id.* at 901; *see also Buck v. Rigdon*, No. 18-CV-2125-DWD, 2022 WL 2915555 (S.D. Ill. July 25, 2022), at *4 ("[A] claim is not barred by *Heck* merely because it concerns an interaction or event that led to a criminal conviction. For example, a plaintiff may be able to bring a civil claim for excessive force against officers whom he

---

[6] The Court is not convinced, and the parties have not argued, that Plaintiff's subsequent not guilty verdict for state criminal charges impacts this analysis because the elements and standards of proof for each charge have substantial differences.

was convicted of assaulting, if he does not attack the facts and findings that support the assault conviction, and he instead focuses on discrete conduct separate from the assault."). Thus, "a contention that a guard struck back after being hit is not incompatible with *Heck*." *Tolliver*, 820 F.3d at 244.

In *Gilbert v. Cook*, an inmate was found guilty of punching officers thru the chuckhole of his cell while they removed handcuffs and he attempted to bring an excessive force claim against the officers for subsequently yanking his hands through the chuckhole, breaking his arm, and removing skin. *Gilbert*, 512 F.3d 899. The trial court prevented plaintiff from producing any evidence about what happened after the punch through the chuck hole because Plaintiff attempted to proceed without admitting or denying the punch. The Seventh Circuit found that if plaintiff had conceded that he punched the guard, he would have then had clear sailing because "[a] contention that a guard struck back after being hit is compatible with *Heck*." *Id.* at 901. The *Gilbert* Court went on to conclude that the trial court should have given a jury instruction that plaintiff struck a guard first, and then the court should have allowed the jury to decide whether the guards used excessive force beyond that point. *Id.* at 902.

In a similar case, an inmate alleged that he spoke with a guard who attempted to provoke him, he then sat down in the chow hall and the guard approached him, continued to provoke him, and ultimately started a fight. *Moore*, 652 F.3d 722. Plaintiff was found guilty by the prison disciplinary board of assault on the guard and disobeying a direct order. The district court dismissed the plaintiff's excessive force claim as barred by *Heck* because in his pleadings, the plaintiff's factual assertions were at odds with the

13

finding of the disciplinary board. The Seventh Circuit found that, although plaintiff contested the disciplinary board findings in his complaint, the district court could have ignored factual allegations that invoked *Heck* or it could have dismissed the claim without prejudice, allowing plaintiff an opportunity to present it in a fashion consistent with *Gilbert. Id.* at 725–26.

Finally, in *Tolliver v. City of Chicago*, a man was found guilty of aggravated battery of a peace officer because an officer injured himself when he tried to move out of the way of Plaintiff's car as it rolled towards him. *Tolliver*, 820 F.3d 237. The elements of aggravated assault required a showing that: 1) he knew the injured party was a peace officer performing official duty; and he (2) intentionally or knowingly; (3) voluntarily; (4) without legal justification; (5) caused bodily harm to the officer. On summary judgment, plaintiff contended that he had no intention of driving towards the officer, but instead he fell over causing his car to roll forward without his knowledge or ability to control it. The district court found that any such claim was *Heck* barred. The Seventh Circuit agreed that although there theoretically could have been a claim made without undermining the conviction, the claim plaintiff chose to make directly undermined his conviction because it negated the mental elements of the offense he pled guilty to. *Id.* at 244. However, "[i]f Tolliver had conceded that he voluntarily and intentionally or knowingly drove towards the officers, or if Tolliver had even remained agnostic on who struck the first blow, he could have brought a claim that the officers' response of firing fourteen bullets at him constituted excessive force and that claim would not be barred by *Heck. Id.*

14

Plaintiff's case walks the fine line illustrated in *Gilbert, Moore,* and *Toliver.* Some of his pleadings and arguments are at odds with his prison disciplinary conviction for assaulting Delgado. He specifically denies striking Defendant, which makes his prison disciplinary conviction impossible, and those arguments are barred under *Heck.* However, as with *Gilbert, Moore,* and *Toliver,* Plaintiff could theoretically admit that he engaged in a physical altercation with the guards, but that actions taken by guards in that altercation were excessive. To this end, Plaintiff alleges that he was punched and kicked after being slammed to the ground and then lifted off the floor and dragged backwards to the segregation unit, all while Defendants shouted violent threats at him (Doc. 96, p. 18-19, ¶¶ 12-17). These allegations suggest that the officers continued to punch and kick Plaintiff after he was restrained, in addition to dragging him backwards, resulting in injuries. Thus, the timing, extent, and appropriateness of any force used by the officers after Plaintiff's restraint are in genuine dispute.

Further complicating these issues is the lack of any information concerning the extent or cause of Plaintiff's alleged injuries. Indeed, Defendants did not address Plaintiff's injuries in their Motion or appear to argue that Defendants' use of force was appropriate, despite evidence in the record suggesting it might be (*See* Doc. 94-5, p. 13) (Defendant Cheek concluded that "the minimal amount of force used to gain compliance from [Plaintiff] was justified."). Nevertheless, there is also evidence in the record that support an inference that Plaintiff suffered extensive injuries following his restraint, including a bruised elbow (Doc. 94-5, p. 8). Plaintiff further attended multiple medical appointments after the incident (Doc. 94-5, p. 8; Doc. 53, p. 31). Thus, there are also

material disputes of fact over the cause and extent of Plaintiff's injuries, and whether Defendants used appropriate or excessive force.

These questions cannot be answered from the record currently before the Court. *See Tolliver*, 820 F.3d at 245 ("The fact-specific nature of whether an officer used excessive force depends on the totality of the circumstances surrounding the encounter.") (citing *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003)).  Nor does the Court weigh the evidence and make credibility determinations at this stage.  *Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007).  For these reasons, the Court cannot grant summary judgment to Defendants concerning any alleged use of excessive force which occurred after Defendant Delgado's assault.

## Count 2: Equal Protection

In Count 2, Plaintiff alleges that Defendants Delgado, Stock, Robinson, Rucker, and Korte singled Plaintiff out for an assault because of his race (Doc. 53).  The Equal Protection Clause protects prisoners "from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974))). "To avoid summary judgment on this claim, [Plaintiff] need[s] to come forward with evidence that would allow a reasonable jury to infer that the defendants intentionally treated him differently because of his race." *Id.* Here, reviewing the evidence in the light most favorable to Plaintiff, Plaintiff has not presented evidence that would allow a jury to reasonably infer that Defendants acted based on racial animus.  Instead, the evidence shows that Defendants' use of force occurred after Plaintiff's conversation over his housing arrangement and personal property, and near Plaintiff's assault of Delgado.  This

16

is supported by Defendants' incident reports and Plaintiff's own affidavit which reference Plaintiff's statements and behavior concerning his housing.

Plaintiff presents two pieces of purported evidence indicating that his race, as a Black person, may have been a factor in these events.  First, Plaintiff recalls that during the assault, Defendant Delgado made racially discriminatory and inflammatory statements about lynching.  Second, Plaintiff recalls having a sympathetic conversation with Major Rose, whom Plaintiff recalls helping him leave Centralia because the officers were mad at him.  Plaintiff alleges that Major Rose is an Black woman.  However, even construing this statement from Major Rose in the light most favorable to Plaintiff, there is no indication that Major Rose suggested the officers were mad at Plaintiff *because of his race* opposed to his assault.

Moreover, single statements made during an isolated event are insufficient to state a cognizable equal protection claim.  *See Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) ("[I]solated events that adversely affect individuals are not presumed to be a violation of the equal protection clause."); *Drew v. Figueredo*, 2020 WL 6079238, at *4 (S.D. Ill. Oct. 15, 2020).  Accordingly, even construing the facts and inferences in the light most favorable to Plaintiff, the undisputed material facts show no indication that Plaintiff was restrained and injured because of his race opposed to his assault of Delgado.   Thus, no reasonable juror could conclude from the evidence before the Court that the incident on September 27, 2017 was racially motivated, and summary judgment is appropriate on this Count.

## Count 3: First Amendment Retaliation

Similarly, no reasonable juror could conclude from the evidence before the Court that the incident on September 27, 2017, or Plaintiff's subsequent disciplinary proceedings and criminal charges were a result of retaliation for Plaintiff filing grievances or engaging in some other protected activity. "To prove that prison officials retaliated against an inmate for filing grievances and lawsuits in violation of 42 U.S.C. § 1983, the inmate must demonstrate that (1) he or she engaged in constitutionally-protected conduct and (2) such conduct was a substantial or motivating factor behind the allegedly retaliatory acts." *Thomas v. Walton*, 461 F. Supp. 2d 786, 795 (S.D. Ill. 2006).

Here, Plaintiff appears to argue that Defendants Delgado and Cheek's actions in issuing Plaintiff a disciplinary ticket and recommending the pursuit of criminal charges against him were taken in retaliation for Plaintiff filing a grievance or engaging in some other protected activity. However, Plaintiff does not specify what grievance he filed that would raise any inference that Defendants retaliated against him because of his alleged protected speech. *See Thomas*, 461 F. Supp. 2d 786 ("To establish retaliation, the inmate must show that he has evidence from which a reasonable jury could find that the defendants' knowledge of his protected activity was a *substantial* or *motivating* factor in their decision to take adverse action against him."). Nor can Plaintiff point to any other alleged action he took that may be construed as protected activity by the First Amendment.[7]

---

[7] Plaintiff does not argue, and no evidence has been provided that suggest Defendants' actions here were motivated by Plaintiff's verbal requests for a transfer or receipt of his personal property.

Instead, construing the evidence and facts in the light most favorable to Plaintiff, there is no indication that Defendants issued Plaintiff's disciplinary ticket or recommended criminal charges for any reason other than the assault, which is not a protected activity. *See McCray v. Butler*, No. 16-CV-01036-MJR, 2016 WL 6835108, at *8 (S.D. Ill. Nov. 21, 2016) ("A physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment.") (internal markings omitted). Accordingly, because Plaintiff has not shown that he engaged in an action protected by the First Amendment, and no reasonably jury could find that Plaintiff's filing of grievances, opposed to his assault on Defendant Delgado, was a substantial or motivating factor in their decision to take adverse action against him, summary judgment is appropriate on Count 3.

### Count 4: Procedural Due Process

In Count 4, Plaintiff asserts a Fourteenth Amendment procedural due process claim against Defendants Brookman and Hart related to his disciplinary charge and hearing. To sustain a Fourteenth Amendment procedural due process claim, Plaintiff must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). When a protected liberty interest is at stake, disciplinary hearings must be conducted in accordance with procedural due process safeguards. See *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009). Those safeguards include (1) advanced written notice of the charge against him; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison

safety allows; and (4) a written statement of the reasons for the discipline imposed. *Wolff,*
*418 U.S. at 563*–69.

Here, Plaintiff's procedural due process claim is premised on Defendants' alleged
failure to provide Plaintiff with written notice of his disciplinary charge in advance of the
Adjustment Committee hearing.  In his affidavit, Plaintiff states he never received a copy
of his disciplinary charge before the hearing because officers at Marion would not give it
to him (Doc. 96).  Plaintiff's argument is supported by his own affidavit, in addition to
the statements in the affidavit of another Marion Inmate Tavaris Burks who claims to
have witnessed Plaintiff's conversations with Officer Royster on September 27, 2017, and
confirmed that Officer Royster did not give Plaintiff his ticket (Doc. 96, p. 31).  Further, in
correspondence from the Administrative Review Board, dated April 11, 2018, there is a
notation suggesting that Plaintiff received notice of his disciplinary ticket on October 13,
2017, and after his hearing (Doc. 53, p. 38).

Defendants do not disagree that Plaintiff did not receive his disciplinary ticket,
and instead argue that Plaintiff refused to accept service of his disciplinary ticket (Doc.
94).  This is a material question of fact, and the Court is prohibited from the weighing the
evidence and resolving any questions of credibility here.  *Washington*, 481 F.3d at 551.
Accordingly, the Court finds that there is a material dispute of fact as to whether Plaintiff
received written notice of his disciplinary charge in advance of the Adjustment
Committee hearing.

Despite this material dispute of fact, Defendants also argue that Plaintiff has not
shown a protective liberty interest here because Plaintiff's segregation time was "not that

long." The Court disagrees, and finds that a reasonable jury could conclude that Plaintiff's one-year segregation period constitutes a protective liberty interest. *See Marion*, 559 F.3d at 698 (disciplinary segregation triggers due process protections depending on the duration and conditions of the segregation) (while a six-month segregation "is not such an extreme term", 240 days' segregation requires a factual inquiry into the conditions of confinement).

Defendants' argument here boards on disingenuous as all the cases cited in their memorandum where a protective liberty interest was *not found* for disciplinary segregation periods were periods of less than one-year. *See, e.g. Hardaway v. Meyerhoff*, 734 F.3d 740, 745 (7th Cir. 2013) (**183-days** segregation, standing alone, would not trigger due process concerns); *Lisle*, 933 F.3d at 721 (**Four months** confinement in segregation "is not so atypical and significantly harsh that it creates a liberty interest"); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (**90-day** segregation was "still not so long as to work an atypical and significant hardship"); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (**70-day** segregation confinement did not implicate liberty interest); *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (**30-day** segregation confinement did not did not create liberty interest); *but see Marion*, 559 F.3d at 698 (**240-days** segregation requires a factual inquiry into the conditions of confinement).

Finally, Defendants argue that Plaintiff's procedural due process claim should be barred by the two-year statute of limitations period for § 1983 claims. Here, Defendants suggest that Plaintiff filed his procedural due process claim more than two years after he exhausted his administrative claims on November 21, 2018 (Doc. 1, p. 18). Plaintiff filed

his original complaint on July 30, 2019 (Doc. 1).  On June 7, 2021, Plaintiff sought leave to amend his complaint and add his procedural due process claim (Doc. 51).  Leave was granted on June 30, 2021 (Doc. 52).  Accordingly, Defendants argue that his claim is time barred because it was filed more than two years after November 21, 2018.  The Court disagrees because Plaintiff's procedural due process claim relates back to the original conduct in the complaint.

Fed. R. Civ. P. 15(c)(1)(B) provides that an "amendment to a pleading relates back to the date of the original pleading when: … (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out-- in the original pleading[.]".  "The central inquiry under Rule 15(c) is whether the original complaint gave the defendant enough *notice* of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 741 (7th Cir. 2018) (internal quotation marks and citations omitted) (emphasis added); *see also Mayle v. Felix*, 545 U.S. 644, 664 (2005) ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").

As Defendants correctly point out, Plaintiff attempted to assert a claim related to the sufficiency of the Administrative Hearing and findings in his original complaint (Doc. 1) and motion for leave to amend, filed on May 19, 2020 (Doc. 25).  However, this claim was dismissed, without prejudice, because Plaintiff failed to allege if and how the disciplinary hearing was procedurally deficient (Doc. 16).  He also failed to allege that he

22

did not receive the disciplinary report prior to the hearing (Doc. 31).  However, Plaintiff clarified these pleading deficiencies in his second motion for leave to amend filed on March 23, 2021 (Doc. 45), which the Court granted on June 30, 2021 (Doc. 52).  Thus, liberally construing Plaintiff's pleadings, the Court is satisfied that Count 4 asserts a claim against Defendants Brookman and Hart related to the sufficiency of his disciplinary proceedings that arose out of the conduct that Plaintiff attempted to set out in his original pleading and thus relates back to the initial July 2019 Complaint, which was timely. Accordingly, the Court rejects Defendants' statute of limitations defense, and summary judgment will not be entered on Count 4.

## Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In practice, this means that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). Although qualified immunity is an affirmative defense, once a defendant invokes it, the burden shifts to the plaintiff to argue that it should not apply. *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020). On summary judgment, this court must decide (1) whether the facts that plaintiff has shown make out

a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also id.* at 236 (holding that courts may conduct these inquiries in either order).

Taking the facts in the light most favorable to plaintiff, a factfinder could reasonably conclude that Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by using excessive force in response to Plaintiff striking Delgado and failing to provide Plaintiff with a copy of his disciplinary ticket. At the time of the incident on September 27, 2017, the right to be free from cruel and unusual punishment as guaranteed under the Eighth Amendment was clearly established, and this right forbids the use of excessive physical force. *See, e.g., Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993); *Daugherty v. Durbin*, No. 17-CV-00809-SPM, 2021 WL 2822811, at *3–4 (S.D. Ill. July 7, 2021). Further, at his disciplinary hearing on October 3, 2017, it was clearly established that a prison disciplinary hearing must be conducted with procedural due process safeguards, including advanced written notice of the charges. *See Wolff*, 418 U.S. at 563–69; *McCall-Bey v. Franzen*, 585 F. Supp. 1295, 1300 (N.D. Ill. 1984) (law governing disciplinary hearings and due process requirements in Illinois department of Corrections was clearly established by 1977).

As noted above, there are material disputes over Plaintiff's resistance to the officers, how much force the officers invoked after Plaintiff struck Delgado, and whether that force was appropriate, in addition to whether Plaintiff received advanced written notice of his disciplinary charge prior to his hearing. "Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity." *Alicea v.*

*Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (citations omitted); *see also Strand v. Minchuk*, 910 F.3d 909, 918 (7th Cir. 2018) (holding that "a dispute of fact regarding the circumstances surrounding an officer's use of force may prevent [the court] from determining whether an individual's clearly established rights have been violated"); *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (denying summary judgment "when the qualified immunity inquiry cannot be disentangled from disputed facts"). These are jury questions, so the Court cannot resolve the issue of qualified immunity.

<u>**Plaintiff's Discovery Motions**</u>

Plaintiff has also filed two discovery motions.  The First, is a Motion for Reconsideration of the Court's Order Dated November 16, 2022 (Doc. 88).  The Second, is a Motion for Court Orders (Doc. 89).  Defendants did not file a response to either motion.

By his Motion for Reconsideration, Plaintiff asks the Court to reconsider its denial of Plaintiff's request to compel Defendants to obtain the trial transcripts from his state court proceeding in Clinton County, Illinois even though Defendants were not parties to that proceeding.  Plaintiff avers that he is indigent and unfamiliar with the process for obtaining trial transcripts in state court as a *pro se* litigant.  Plaintiff further argues that an amendment to IL R S CT Rule 415(c), which governs a criminal defendant's access to discovery materials in Illinois State court, does not preclude his ability to obtain these transcripts.  This amendment, however, was effective as of October 2020, and prior to Plaintiff's original motion filed in July 2022 (Doc. 81).  Accordingly, the Court can discern no new factual or legal basis to reconsider its prior order, and declines to do so.

More importantly, and as discussed above, Plaintiff has not shown that the transcripts he seeks to obtain have any bearing on the current proceedings. While Plaintiff has not been convicted of assault under Illinois state law, his prions conviction for assault remains in effect. Thus, *Heck*, 512 U.S. 477 bars Plaintiff from challenging the findings of the prison disciplinary committee that he did assault or strike Defendant Delgado. *See, e.g., Buck*, 2022 WL 2915555, at *4. While *Heck* does not preclude Plaintiff's arguments that Defendants used excessive force after this assault, he is barred from challenging the fact that he struck Defendant Delgado. Plaintiff has not shown that the trial transcripts or other evidence used at his state criminal trial have relevancy to his excessive force claim in this matter. Accordingly, Plaintiff's Motion for Reconsideration (Doc. 88) is **DENIED**.

Plaintiff's Motion for Orders asks the Court: (1) to ensure Plaintiff is made aware of all court appointments, video conferences, court dates, zoom schedules, and depositions, (2) to grant Plaintiff additional time at the law library and (3) to direct the law library clerk at Western Illinois Correctional Center to print all e-filings and orders in "big print" (Doc. 89). The relief requested in Plaintiff's Motion for Orders is premature or already safeguarded by the Federal Rules of Civil Procedure and Local Rules of this Court. Specifically, Plaintiff is already entitled to notice of the events he cites in his Motion as they relate to this court proceeding. While Plaintiff cites to an alleged miscommunication between Plaintiff and Defendants concerning a notice of deposition, Plaintiff does not indicate that there have been any further issues with the scheduling of

his deposition or receiving communications from Defendants.  Accordingly, the Court can discern no legal basis for ordering further notice be provided to him at this time.

Moreover, while Plaintiff seeks to have additional time at the law library and for his documents to be printed out a specific way, the Court can discern no factual or legal authority for the Court to order such relief at this time.  Plaintiff has not argued that any alleged issues with the law library have affected his ability to participate in these proceedings.  Indeed, Plaintiff did not request additional time or resources in responding to Defendants' Motion for Summary Judgment.  And nothing prevents Plaintiff for requesting additional time in the future should he require it.  For these reasons, Plaintiff's Motion for Court Orders (Doc. 89) is **DENIED**.

## Conclusion

For all of the above stated reasons, Defendants' Motion for Summary Judgment (Doc. 93) is **GRANTED, in part, and DENIED, in part**.  The Motion is **GRANTED** as to Counts 2 and 3, but **DENIED** as to Counts 1 and 4.

Accordingly, at the close of this case, the Clerk of Court is **DIRECTED** to enter summary judgment in favor of Defendants Delgado, Stock, Robinson, Rucker, Korte, and Cheek, and against Plaintiff on Counts 2 and 3 of the amended complaint.

Further, as any remaining claims against Defendant Thompson were **DISMISSED**, **without prejudice**, the Clerk of Court is **DIRECTED** to terminated Defendant Thompson from the docket sheet.

By separate the Notice the Court will set this matter for a status hearing to discuss scheduling further resolution of this matter.  However, first, the Court will impose a short

stay of proceedings so the Court may further evaluate whether a settlement conference may be beneficial, or otherwise evaluate whether the recruitment of counsel on Plaintiff's behalf may be appropriate.  Accordingly, the Court **STAYS** this case until **October 20, 2023.**  The stay does not preclude the parties' ability to discuss a possible resolution of this case.  To that end, by **October 13, 2023**, the parties are **DIRECTED** to submit their positions on the potential viability of a settlement conference.

> **SO ORDERED.**

Dated: September 25, 2023

/s *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge